UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**JEHAD ALNAJJAR,**

    *Petitioner*,

v.                                                 Case No. 5:25-CV-0822-JKP

**THE GEO GROUP, INC., et al.,**

    *Respondents*.

## ORDER GRANTING
## PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is a Petition for Writ of Habeas Corpus (ECF No. 1) filed pursuant to 28 U.S.C. § 2241. Respondents (often referred to as "the Government") have filed a response (ECF No. 7). After appointment of new counsel, Petitioner has filed a reply (ECF No. 11). The petition is ready for ruling. After reviewing the briefing, provided evidence, and applicable law, the Court grants the petition for the reasons below.

### I. BACKGROUND

Petitioner is a native of Saudi Arabia who is "ethnically Palestinian." It is his understanding that he is a Palestinian national through his father, but he has never lived in or visited Palestine. He claims he is stateless, as no country has ever recognized him as a citizen. He entered the United States without inspection on April 16, 2022, near Del Rio, Texas. He was detained upon entry and charged with violating 19 U.S.C. § 1459, resulting in a guilty plea on June 29, 2022. He was sentenced to eight months imprisonment with one-year supervised release.

The United States Immigration and Customs Enforcement ("ICE") took custody of Petitioner upon his release from incarceration. He claims a fear of returning to Saudi Arabia but received a negative credible fear determination on January 17, 2023. An Immigration Judge "(IJ)" affirmed the decision two days later. On February 2, 2023, Petitioner received a credible fear

interview regarding his fear of removal to Israel. On February 7, 2023, he received a negative determination for that interview. An IJ affirmed that determination on February 14, 2023.

Following those immigration proceedings ICE detained Petitioner for about six months until it released him on an Order of Supervision on July 21, 2023, upon a finding that there was no significant likelihood of removal in the foreseeable future and that Petitioner was neither a flight risk nor a threat to public safety. Petitioner remained compliant with the terms of his supervised release, including periodically presenting himself to an ICE Office. On June 12, 2025, Petitioner presented himself to an ICE Office and he was allowed to leave only with an ankle monitor. The next day, ICE directed him to report again on June 14, 2025. When Petitioner voluntarily complied the next day, ICE revoked his Order of Supervision and detained him without any specific reason for detention. Officers simply told him that he was being taken back into custody because he was "illegal" and due to a "new government policy."

Petitioner remains detained at the Karnes County Residential Facility. Respondents did not serve him or his counsel with notice of revocation prior to his detention. Nor did they conduct an interview or comply with any of the revocation and custody-review procedures in 8 C.F.R. § 241.4.

Since his current detention, ICE officials have acknowledged that Saudi Arabia previously refused to accept Petitioner. One officer, nevertheless, stated that ICE would submit travel documents to Saudi Arabia again, "just in case." During the first month of his current detention, Petitioner completed an application for a passport at the Israeli consulate. He has provided a list of about thirteen countries that he would be willing to be removed, but the Government has yet to facilitate removal to any of them. The Government has indicated that it intends to try to remove him to "a country that speaks Arabic," but has provided not other details. It has not given Petitioner any specific destination, timeline, or any evidence that a travel document has been issued by any nation.

In the instant habeas petition, as clarified through his reply, Petitioner solely seeks an order for immediate release on the same Order of Supervision that he had complied with for years. He does not seek any order preventing his removal to a third country—only an order preventing his removal to a third country without an opportunity to dispute whether such country is indeed a "safe third country" for removal. Stated simply, he seeks to prevent ICE from unnecessarily detaining him in custody prior to the point at which his presence is necessary for imminent removal.

While recognizing that several legal reasons exist for finding his current detention unlawful, Petitioner focuses on two primary reasons in his reply. First, he submits that the indefinite detention of a noncitizen in his circumstances is not authorized by the Immigration and Nationality Act ("INA"), as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). In his view, "*Zadvydas* provides the simplest direct route" for the Court to conclude that his detention is unlawful based on "substantially similar reasons to those articulated by this Court in a decision issued one week ago." Reply at 8 (citing *Marquez-Amaya v. Thompson*, No. 5:25-CV-1501-JKP, 2025 WL 3654327, at *5 (W.D. Tex. Dec. 15, 2025)). But, as recognized in the reply,

> this is not exclusively a *Zadvydas* case. Rather, it also concerns the authority of Immigration and Customs Enforcement (ICE) to re-arrest and indefinitely detain a man who, after a prior period of detention, was released on an Order of Supervision (OSUP) for years precisely because his removal was not significantly likely in the reasonably foreseeable future. The controlling authority for this scenario is not exclusively *Zadvydas*, but the specific federal regulation governing the revocation of release: 8 C.F.R. § 241.13(i). Here, ICE failed to follow its own regulations when Mr. Alnajjar was re-detained by ICE at a check-in.

*Id*. (footnotes omitted).

Petitioner maintains that his immediate removal is not reasonably foreseeable and that the orders of removal on January 19 and February 14, 2023, triggered the ninety-day period for his removal under 8 U.S.C. § 1231(a)(1). He contends that because it was not possible to remove him during the removal period and because it is unconstitutional to detain him indefinitely, he was released on July 21, 2023, subject to the terms of the Order of Supervision. Once the ninety-day

3

removal period expires and an individual is subject to an Order of Supervision, ICE must follow the procedures set out in 8 C.F.R. § 241.4(*l*) to revoke the supervision and re-detain the person.

Respondents argue that this case is squarely controlled by Supreme Court precedent (*Dep't. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140-41 (2020)), which held that aliens detained under 8 U.S.C. § 1225(b) shortly after unlawful entry, even if subsequently released on parole, lack any due process rights beyond what Congress permitted in the INA. They contend that *Zadvydas* interpreted the detention authority of a different statute, 8 U.S.C. § 1231, not the statute under which Petitioner is detained, § 1225(b). According to Respondents, Petitioner is mandatorily detained under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) until he is removed. For ease of reference, the Court will at times refer to this mandatory detention provision simply as ¶ IV.

## II. LEGAL STANDARD

Habeas petitioners must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, ___ F. Supp. 3d ___, ___, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (quoting 28 U.S.C. § 2241(c)(3)). They "bear[] the burden of proving that [they are] being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [this] burden of proof by a preponderance of the evidence." *Id.* (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) and citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). Courts "considering a habeas petition must 'determine the facts and dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

## III. ANALYSIS[1]

Petitioner argues that he is entitled to relief for two reasons. First, he argues that his

---

[1] In its analysis of the facts, issues, and arguments presented in this case, the Court notes close similarity to that presented in many recent Petitions for Writ of Habeas Corpus filed in the Western District of Texas, and specifically, the San Antonio Division. The Court finds the reasoning in these similar cases persuasive and finds the ultimate determination based upon this reasoning correct. For that reason, and for the sake of expediency, the Court follows

detention is illegal under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable. Second, he argues that Respondents failed to comply with their own regulations, a per se violation of procedural due process.

Respondents argue that Petitioner's reliance on *Zadvydas* is misplaced, because Petitioner is being detained under 8 U.S.C. § 1225(b)(1), not § 1231. They also challenge this Court's jurisdiction. The Court will address the jurisdictional challenges first.

**A. Jurisdictional Challenges**

Respondents invoke 8 U.S.C. §§ 1252(g), 1252(a)(5), and 1226(e) as precluding jurisdiction to review claims related to the validity or execution of an order of removal. The Court has previously rejected each of these provisions as divesting jurisdiction over similar habeas actions. *See, e.g.*, *Guzman Tovar v. Noem*, No. 5:25-CV-1509-JKP, 2025 WL 3471416, at *2 (W.D. Tex. Nov. 25, 2025) (addressing §§ 1252(g) and 1226(e)); *Martinez Orellana v. U.S. Dept. of Homeland Sec.*, No. 5:25-CV-1028-JKP, 2025 WL 3471569, at *2–4 (W.D. Tex. Nov. 24, 2025) (addressing §§ 1252(g) and 1252(a)(5)). For the reasons stated in those cases, the Court concludes Respondents' jurisdictional challenges fail, and the Court has jurisdiction to consider the arguments presented in the instant habeas petition. This habeas case does not require review of any claim regarding the validity or execution of an order of removal.

**B. Basis for Detention**

Respondents submit that 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) provides their basis for detaining Petitioner after they revoked his Order of Supervision and re-detained him. That provision provides for mandatory detention for noncitizens who have sought asylum but lack a credible fear of persecution. Subject to a review determination not at issue here, if an asylum "officer determines

---

these opinions closely. *See, e.g., Puertas-Mendoza v. Bondi*, Case No. 5:25-CV-0890-XR, 2025 WL 3142089 (W.D. Tex. Oct. 22, 2025); *Villanueva v. Tate*, ___ F. Supp. 3d ___, ___, No. CV H-25-3364, 2025 WL 2774610 (S.D. Tex. Sept. 26, 2025).

that an alien does not have a credible fear of persecution, the officer shall order the alien removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I). In addition, any noncitizen "subject to the procedures under this clause shall be detained pending a final determination of credible fear and, if found not to have such a fear, until removed." *Id*. § 1225(b)(1)(B)(iii)(IV).

All those things, except removal, occurred in this case during the first half of 2023. But, because ICE could not effect Petitioner's removal during the period prescribed by law, it ordered that Petitioner be placed under supervision and permitted to be at large under imposed conditions. Even though nothing indicates that Petitioner violated any term of release, ICE re-detained Petitioner approximately two years after he was released under the Order of Supervision. While Respondents want to still rely on § 1225(b) as the basis for the current detention, they ignore the fact that was previously released under an Order of Supervision. Their argument has no basis in the statutory text and contradicts the implementing regulations for expedited removal.

No one disputes that Petitioner is subject to a final order of removal. Such an order triggers the provisions found at § 1231 which, as its title suggests, governs "Detention and removal of aliens ordered removed." There appears to be no basis for limiting § 1231 to specific processes by which a removal order was issued. It thus appears that § 1231, and thus *Zadvydas*, applies to this case.

Even if § 1225(b) provided the detention basis at one time, the 2023 release on the Order of Supervision clearly reflects that the mandatory detention gave way to § 1231 and its provisions concerning removal periods. ICE certainly did not detain Petitioner "until removed," as set out in ¶ IV. Although the provisions of § 1231 might have been inapplicable while Petitioner awaited the final determination on his credible fear assertion, once that determination occurred, there is no reason to not apply the provisions of § 1231. After all, § 1231 governs the detention, release, and

6

removal of noncitizens who are subject to a final order of removal. Indeed, the issue addressed in *Zadvydas*, "whether aliens that the Government finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States," *see* 533 U.S. at 695, appears to be the precise issue in this case.

Furthermore, after detaining Petitioner for nearly six months, the Government correctly determined that the statutory removal period of § 1231(a), coupled with the applicability of *Zadvydas*, required his release on the Order of Supervision in July 2023. That order itself provides a clear statement that ICE applied § 1231(a) and *Zadvydas* through its stated reason for release on supervision: "Because the agency has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large under the following conditions . . .."

**C. Application**

To the extent that Petitioner contends that *Zadvydas* requires his release, the Court agrees. The Court agrees with Petitioner that this case is materially like *Marquez-Amaya v. Thompson*, No. 5:25-CV-1501-JKP, 2025 WL 3654327 (W.D. Tex. Dec. 15, 2025). It is also like *Shengelia v. Ortega*, No. 5:25-CV-1545-JKP, 2025 WL 3654368 (W.D. Tex. Dec. 16, 2025) in that there is no dispute that the presumptively reasonable six-month period recognized in *Zadvydas* has passed. Not only was Petitioner previously detained for nearly six months before his release in July 2023, but he has also now been detained another six months since being taken back into ICE custody in June 2025. While this case does present some factual differences in that it does not involve a withholding of removal or protection under the Convention Against Torture ("CAT"), those differences do not dictate a different outcome under the facts here.

In this case, there is no question that Petitioner has been detained longer than the presumptively reasonable six-month period recognized in *Zadvydas*. Unlike *Villanueva*, *Puertas-Mendoza*,

and *Marquez-Amaya*, there is no issue of prematurity or whether Petitioner has been subject to detention for longer than the presumptively reasonable period. The presumption of reasonableness no longer applies.

To make out a *Zadvydas* claim after the six months have run, a detained noncitizen need only "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. If they do so, "the Government must respond with evidence sufficient to rebut that showing." *Id*.

Through the circumstances of his detention and the undisputed facts, Petitioner has satisfied the requirements of *Zadvydas*. The circumstances provide good reason to believe that there is no significant likelihood of his removal in the foreseeable future. In July 2023, ICE released Petitioner subject to an Order of Supervision. Implicit in such a decision is a finding that Petitioner "was nonviolent and would remain so if released, that he was not likely to pose a threat to the community if released, that he was not likely to violate the conditions of his release, and that he did not pose a flight risk." *Villanueva v. Tate*, ___ F. Supp. 3d ___, ___, No. CV H-25-3364, 2025 WL 2774610, at *1 (S.D. Tex. Sept. 26, 2025) (citing 8 C.F.R. §§ 241.4(d)(1) and (e)). Release under an Order of Supervision of a noncitizen who has been ordered removed invokes "detailed regulations concerning when and how that Order of Supervision may be revoked." *Id*. at *2 (citing 8 C.F.R. § 241.4(*l*)). While an "Order of Supervision may be revoked if the noncitizen violates any of its conditions," or "when it is appropriate to enforce a removal order or when "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate," the Government must notify the noncitizen "of the reasons for revocation of his or her release" and afford the noncitizen "a prompt initial informal interview to allow the noncitizen an opportunity to respond to and contest the reasons for revocation." *Id*. (citing regulations). While these legal principles arise in the more typical re-detention circumstances of a noncitizen, the regulations

8

governing revocation of release following a prior *Zadvydas* determination and release, as here, likewise provide details as to when and how the release on supervision may be revoked. *See* Reply at 8, 11–13 (citing 8 C.F.R. § 241.13(i)).

Petitioner remained released on that Order of Supervision through June 14, 2025, when Petitioner complied with direction from ICE to report. At that point, ICE detained him and revoked his supervision order without reason other than he was "illegal" and there was a "new government policy." At the time of Respondents' response and Petitioner's reply, Respondents still had no removal plan in place. Nothing indicates that, following Petitioner's final order of removal and Petitioner's initial release, the Government took any efforts to remove him until after re-detaining him in June 2025.

Additionally, "any efforts to remove [Petitioner] to a third country would likely be delayed by proceedings contesting his removal to the third country . . . identified." *Villanueva*, 2025 WL 2774610, at *10. When a petitioner "likely will have the opportunity to seek further relief from the Immigration Court, and then potentially file appeals from any adverse rulings," the circumstances "further demonstrate[] that removal is not likely in the reasonably foreseeable future." *Zavvar v. Scott*, No. CV 25-2104-TDC, 2025 WL 2592543, at *8 (D. Md. Sept. 8, 2025). Even when ICE has "identified a third country," noncitizens like Petitioner "would be entitled to seek fear-based relief from removal to that country, which would require additional, lengthy proceedings." *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 399 (D.N.J. 2025) (cleaned up).

These factors all impact the propriety of continued detention. Notably, ICE did not commence Petitioner's current detention because it had located a country willing to accept him. ICE detained him essentially without any explanation and without a removal plan. There was no notice that the Government intended to revoke his release on the Order of Supervision. There was no determination that the Government could expeditiously remove Petitioner. Through the current

detention, the Government has held Petitioner for more than six months. But it has produced no country willing to accept Petitioner, no travel documents, and no timeline or schedule for removal.

When there has been a long period of time between an issued supervision order (in this case almost two years); no removal plan in place at the commencement of detention; an initial lack of explanation for detention, no immigration proceedings concerning removal to a third country, and no progress during the current period of lengthy detention, the circumstances demonstrate that there is no substantial likelihood that Petitioner's removal is reasonably foreseeable. *See Puertas-Mendoza v. Bondi*, Case No. 5:25-CV-0890-XR, 2025 WL 3142089, at *2–4 (W.D. Tex. Oct. 22, 2025) (granting habeas petition on same grounds under substantially similar factual circumstances); *Villanueva*, 2025 WL 2774610, at *10 (granting habeas petition based on *Zadvydas* when detainee had withholding of removal, the Government had neither initiated proceedings to lift the order to withhold removal nor removed him for eight years following his order of removal, and there was no evidence that circumstances had changed to make removal reasonably foreseeable).

Under the circumstances of this case, the Court concludes that habeas relief is proper and *Zadvydas* requires Petitioner's release from his unlawful detention. While the Court has normally had no reason to address a petitioner's claim that the Government failed to comply with its own regulations when re-detaining a noncitizen, like Petitioner, the Court recently granted habeas relief on that very ground under a more typical re-detention scenario. *See Chicas Ortega v. Ortega*, No. SA-25-CV-01229-JKP, unpub. op. at 4–10 (W.D. Tex. Dec. 22, 2025). As discussed in *Chicas Ortega*, a failure to comply with applicable regulations provides an alternative basis for granting habeas relief and ordering a petitioner's release. Despite differences in the applicable regulations, the Court finds the failure to comply with 8 C.F.R. § 241.13 provides an alternative basis for granting relief in this case.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Petition for Habeas Corpus (ECF No. 1). It is **ORDERED** that:

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Jehad Alnajjar from custody, under appropriate conditions of release, to a public place by to a public place **no later than 7:00 p.m. December 25, 2025**. **If release on that date poses unusual logistical concerns for Respondents, they should endeavor to release Petitioner tomorrow.**

2. Respondents must **NOTIFY** Petitioner's counsel of the exact location and exact time of his release as soon as practicable and no less than two hours before his release.

3. Any possible or anticipated removal or transfer of Petitioner under this present detention is **PROHIBITED**.

4. The parties shall **FILE** a Joint Status report no later than **7:00 p.m. December 26, 2025**, confirming that Petitioner has been released

A final judgment will be issued separately.

**IT IS SO ORDERED this 23rd day of December 2025.**

*[Signature: Jason Pulliam]*
**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**